UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NICOLE BAKER,

                    Plaintiff,

         v.

BAYER HEALTHCARE
PHARMACEUTICALS, INC.,

                    Defendant.

NO. C13-0490 TEH

**ORDER GRANTING IN PART AND
DENYING IN PART DEFENDANT'S
MOTION TO DISMISS**

This matter came before the Court on December 9, 2013, on Defendant Bayer
Healthcare Pharmaceuticals, Inc.'s ("Defendant") motion to dismiss Plaintiff Nicole
Baker's ("Plaintiff") Second Amended Complaint ("SAC").  After carefully considering
the parties' written and oral arguments, and relevant law, the Court now GRANTS in part
and DENIES in part Defendant's motion.

**BACKGROUND**

This suit is a product liability case stemming from Plaintiff's use of the intrauterine
contraceptive device known as "Mirena."  Mirena is made by Defendant, a Delaware
corporation, which is in the business of designing, manufacturing, marketing, testing, and
distributing prescription drugs and women's healthcare products, including Mirena.  SAC
¶¶ 4, 10, Docket No. 21.  Mirena is a T-shaped polyethylene frame with a steroid reservoir
that releases 20 μg/day of levonorgestrel, a prescription medication used as a
contraceptive; it is inserted into the uterus by a healthcare provider during an office visit.
The federal Food and Drug Administration approved Defendant's New Drug Application
for Mirena in December 2000.  *Id*. ¶ 14-15.

Plaintiff, a California resident, alleges that Mirena's label does not accurately warn

*United States District Court
Northern District of California*

and understates the risks of certain medical conditions or injuries associated with use of Mirena, including spontaneous migration of Mirena, perforation of the uterus, embedment, infections, cysts, ectopic and intrauterine pregnancy, adhesions, fetal injury and fetal death caused by Mirena. *Id*. ¶¶ 18-19. Plaintiff alleges that Defendant did not effectively test or analyze results of pre-market tests before putting Mirena on the market, but nonetheless promoted Mirena through social media and online marketing campaigns while understating the associated risks. *Id*. ¶¶ 20-21. Plaintiff further alleges that in March 2009, the Department of Health and Human Services' Division of Drug Marketing, Advertising, and Communications ("DDMAC") issued a warning regarding Defendant's advertising materials for Mirena, stating that they did not communicate any risk information and inadequately communicated Mirena's indications. *Id*. ¶¶ 22-23. Plaintiff also alleges that in December 2009, DDMAC contacted Defendant regarding its "Mirena Simple Styles Statements Program," which Plaintiff alleges were consumer-directed live presentations directed toward "busy moms" that utilized scripts that omitted information regarding the serious risks associated with using Mirena. *Id*. ¶¶ 24-27. Plaintiff alleges that Defendant concealed its knowledge of the defects in their products from the Plaintiff, her physicians, hospitals, pharmacists, the FDA and the public in general. *Id*. ¶ 28.

Plaintiff had her Mirena inserted on January 6, 2010 at Community Physicians Network for Women in Indianapolis, Indiana by her healthcare provider. Plaintiff alleges that she chose Mirena because it was promoted as a safe and effective method of birth control. *Id*. ¶ 29. On June 21, 2011, after suffering from extreme pelvic pain, Plaintiff was rushed to the emergency room ("ER") at Parkview Community Hospital in Riverside, California. She received treatment for abdominal pain. *Id*. ¶ 30. Over the next four months, Plaintiff repeatedly went to the ER. On June 28, 2011, Plaintiff went to the ER at Riverside Community Hospital in Riverside, California for sharp pains on her left side. An ultrasound showed a left ovarian cyst. Plaintiff was treated for her pain. *Id*. ¶ 31. On September 3, 2011, Plaintiff went to the ER at Parkview Community Hospital for severe abdominal pain, nausea and pain associated with an ovarian cyst. *Id*. ¶ 32. On October 10,

United States District Court
Northern District of California

2

1    2011, Plaintiff was again rushed to the ER at Riverside Community Hospital for extreme

2    pelvic pain, and noted that her pain level was a 7 out of 10.  Plaintiff had a urinary tract

3    infection, a fever and leukocytosis.  *Id*. ¶ 33.  Plaintiff's Mirena "was expelled" on October

4    20, 2011.  After removal, Plaintiff continued to suffer from vaginal bleeding, pelvic pain,

5    and pain when urinating.  *Id*. ¶ 34.  Prior to having Mirena, Plaintiff alleges that she did

6    not suffer from these injuries.  *Id*.  In sum, Plaintiff maintains she has suffered severe

7    injuries, including, but not limited to, abdominal pain, an ovarian cyst, infections,

8    substantial mental and physical pain and suffering, and has incurred medical expenses for

9    treatment and care, and will continue to incur expenses in the future.  *Id*. ¶ 35.

10          Plaintiff filed suit on February 4, 2012, invoking this Court's diversity jurisdiction

11   pursuant to 28 U.S.C. § 1332.  She asserts claims against Defendant for negligence, for

12   strict liability for design defects, failure to warn, and manufacturing defects, as well as for

13   breach of implied and express warranties.  On March 12, 2013, the Court stayed the case

14   pending a motion to transfer the case as potentially related to the Judicial Panel on

15   Multidistrict Litigation ("JPML") Docket No. 2434, *In re: Mirena IUD Products Liability

16   Litigation*.  Docket No. 13.  On August 7, 2013, the JPML vacated the conditional transfer

17   of the case because the Panel found that Plaintiff alleged injuries broader than injury

18   related to the risk of perforation and migration associated with Mirena, which was the

19   scope of the MDL.  Docket Nos. 14, 16.  After the Court lifted the stay, Plaintiff filed the

20   SAC and this motion to dismiss followed.

21

22   **LEGAL STANDARD**

23          Dismissal is appropriate under Rule 12(b)(6) of the Federal Rules of Civil

24   Procedure[1] when a plaintiff's allegations fail "to state a claim upon which relief can be

25   granted."  Fed. R. Civ. P. 12(b)(6).  A dismissal under Rule 12(b)(6) "can be based on the

26   lack of a cognizable legal theory or the absence of sufficient facts alleged under a

27

28   _____
     [1] All references to "Rules" hereinafter refer to the Federal Rules of Civil Procedure.

United States District Court
Northern District of California

United States District Court
Northern District of California

cognizable legal theory." *Balistreri v. Pacifica Police Dep't,* 901 F.2d 696, 699 (9th Cir. 1990).

Under Federal Rule of Civil Procedure 8(a), a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face" with sufficient specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 545, 570 (2007) (citation and quotation marks omitted). "Rule 8 . . . does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). Plausibility does not equate to probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Id.* "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In ruling on a motion to dismiss, a court must "accept all material allegations of fact as true and construe the complaint in a light most favorable to the non-moving party." *Vasquez v. Los Angeles Cnty.,* 487 F.3d 1246, 1249 (9th Cir. 2007). The Court, however, is not "bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (internal quotation marks omitted). Dismissal of claims that fail to meet this standard should be with leave to amend unless it is clear that amendment could not possibly cure the deficiencies in the complaint. *Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1296 (9th Cir. 1998).

**DISCUSSION**

Defendant moves for dismissal on all claims under Rule 12(b)(6). For the reasons discussed below, Defendant's motion is GRANTED in part and DENIED in part.

**I.    Negligence Claim**

Under California law, to maintain a negligence action, Plaintiff must allege that Defendant owed a legal duty, breached that duty, and that the breach proximately caused

1  injury to the Plaintiff.  *Garcia v. W & W Cmty. Dev., Inc.*, 186 Cal. App. 4th 1038, 1044

2  (2010).  Defendant argues Plaintiff's negligence claim is insufficiently pleaded under Rule

3  8 because Plaintiff does not allege sufficient facts and relies on bare legal conclusions to

4  assert her negligence claim.

5          The Court holds that Plaintiff has sufficiently alleged facts supporting a negligence

6  claim.  The Court notes at the outset that the SAC is far from a model of clarity in

7  pleading.  Nonetheless, the Court must construe the SAC in a light most favorable to the

8  non-moving party and assume the truth of non-conclusory, material allegations of fact

9  contained therein.  Plaintiff alleges that Defendant had a duty to exercise reasonable care

10  in the designing, researching, manufacturing, marketing, supplying, promoting, packaging,

11  selling or distributing Mirena, which included a duty to assure that Mirena would not cause

12  users to suffer unreasonable, dangerous side effects.  SAC ¶ 37.  Plaintiff alleges that

13  Defendant breached that duty when it, among other things: failed to adequately warn the

14  Plaintiff, other Mirena users, physicians and the FDA of serious side effects of Mirena,

15  including but not limited to, migration, perforation, embedment, ectopic pregnancies,

16  intrauterine pregnancies, infections, adhesions, cysts, fetal injury and death.  *Id.* ¶ 37(g).

17  Plaintiff alleges that Defendant concealed its knowledge of the defects of Mirena from

18  Plaintiff and her physician, *id*. ¶ 28, and that Plaintiff chose Mirena because it was

19  promoted as a safe and effective method of birth control.  *Id*. ¶ 29.  Plaintiff alleges that

20  Defendant's breach caused her injuries because after Mirena was inserted by her healthcare

21  provider, she subsequently suffered from a series of injuries including extreme pelvic and

22  abdominal pain, an ovarian cyst, nausea, urinary tract infection, fever, leukocytosis, all of

23  which culminated when "Plaintiff's Mirena was expelled," after which she suffered from

24  vaginal bleeding, pelvic pain, and pain when urinating.  *Id.* ¶ 34.  Plaintiff alleges that prior

25  to having Mirena, Plaintiff did not suffer from these injuries.  *Id.*  Thus, read in a favorable

26  light, Plaintiff has alleged sufficient factual matter to state a claim for negligence that is

27  plausible on its face.

28          Defendant states that the "only allegation that provides any specificity at all

United States District Court
Northern District of California

1    includes a number of injuries that Plaintiff does not contend to have suffered from."  Reply

2    at 3-4, Docket No. 26 (citing SAC ¶ 38(g) and listing alleged injuries, but omitting

3    "infections" and "cysts," which are the injuries for which Defendant allegedly failed to

4    provide adequate warnings and from which Plaintiff allegedly suffered).  During oral

5    argument, the Court questioned Plaintiff's counsel regarding how a negligence action may

6    be maintained based on a failure to warn about injuries Plaintiff did not allege she

7    sustained.  Plaintiff's counsel argued that had Plaintiff been aware of the other alleged

8    risks of Mirena, including migration of Mirena, that warning, had it been given, would

9    have been relevant to her decision-making process.  As the parties did not specifically brief

10   this narrow issue, and because "adequacy of a warning is a question of fact for the jury" in

11   most cases, the Court cannot say at the motion to dismiss stage that Plaintiff's theory is

12   implausible as a matter of law.  *Jackson v. Deft, Inc.*, 223 Cal. App. 3d 1305, 1320 (1990).

13       Defendant also argues that it cannot be held liable for a failure to test Mirena

14   because California law does not recognize an independent cause of action for failure to

15   test.  Defendant is correct.  "Imposing liability for breach of a purported 'independent duty

16   to conduct long-term testing' would be beyond the pale of any known California tort

17   doctrine, because, *inter alia*, the causal link between Plaintiff's known harm, and the

18   unknown outcome of the hypothetical testing is entirely speculative."  *Phillippi v. Stryker*

19   *Corp.*, No. 2:08-CV-02445-JAM, 2010 WL 2650596, at *2 (E.D. Cal. July 1, 2010) *aff'd*,

20   471 F. App'x 663 (9th Cir. 2012) (citing *Valentine v. Baxter Healthcare Corporation*, 68

21   Cal. App. 4th 1467, 1485-86 (1999)).  However, Plaintiff argues that she is not asserting

22   that Defendant had an independent duty to conduct long-term testing, but that the duty to

23   test was one of the duties owed to Plaintiff as part of the obligation to protect the end-user

24   from long term risks.  This concession brings Plaintiff's duty to test allegation within the

25   ambit of *Valentine*, which recognizes that testing and inspection duties may be tied to

26   liability for manufacture, design, and failure to warn, even if they are not maintainable as

27   an independent duty.  68 Cal. App. 4th at 1485.

28       Accordingly, because Plaintiff has sufficiently pleaded a negligence claim,

1    Defendant's motion to dismiss the First Cause of Action for Negligence is DENIED.

2

3    **II.    Strict Liability – Product Liability**

4          California recognizes strict liability for three types of product defects –

5    manufacturing defects, warning defects (inadequate warnings or failure to warn), and

6    design defects.  *Lucas v. City of Visalia*, 726 F. Supp. 2d 1149, 1154 (E.D. Cal. 2010)

7    (citing *Anderson v. Owens-Corning Fiberglas Co.*, 53 Cal. 3d 987, 995 (1991)).  Plaintiff

8    alleges that Defendant is strictly liable under all three product defect theories.

9          **A.      Strict Liability – Defective Manufacturing Claim**

10          Under the "manufacturing defect" theory, generally a "manufacturing or production

11   defect is readily identifiable because a defective product is one that differs from the

12   manufacturer's intended result or from other ostensibly identical units of the same product

13   line."  *Lucas*, 726 F. Supp. 2d at 1155 (citing *Barker v. Lull Engineering Co.*, 20 Cal. 3d

14   413, 429 (1978)).  The "manufacturing defect" theory posits that "a suitable design is in

15   place, but that the manufacturing process has in some way deviated from that design."  *Id*.

16   (citation omitted).  To survive a challenge to a manufacturing defect claim under Rule

17   12(b)(6), a plaintiff must "*identify/explain how* the [product] either deviated from

18   [defendant's] intended result/design or *how* the [product] deviated from other seemingly

19   identical [product] models."  *Id*. (emphasis in original) (citing *Barker*, 20 Cal. 3d at 429);

20   *see also Trabakoolas v. Watts Water Technologies, Inc.*, No. 12-CV-01172-YGR, 2012

21   WL 2792441, at *4 (N.D. Cal. July 9, 2012) (dismissing manufacturing defect claim on

22   motion to dismiss).

23          Plaintiff's claim for a strict product liability manufacturing defect fails because

24   Plaintiff does not allege facts that identify or explain how Mirena either deviated from

25   Defendant's intended result or design or how Mirena deviated from other seemingly

26   identical Mirena models.  *Lucas*, 726 F. Supp. 2d at 1155.  Plaintiff argues that because

27   she suffered from certain injuries which she alleges were caused by Mirena, in hindsight,

28   Mirena then clearly deviated from the Defendant's intended result.  However, the SAC

United States District Court
Northern District of California

7

contains no allegations of *how* the deviation occurred or whether her Mirena was manufactured defectively.  Plaintiff has thus provided only insufficient legal conclusions that Mirena had a manufacturing defect, which are insufficient to state a legally cognizable manufacturing defect claim.  Defendant's motion to dismiss Plaintiff's Second Cause of Action with respect to the strict liability manufacturing defect claim is GRANTED WITH LEAVE TO AMEND.

### B.   Strict Liability – Failure to Warn Claim

The California Supreme Court has held that manufacturers of prescription drugs can be held strictly liable for failure to warn of knowable risks.  *Brown v. Superior Court*, 44 Cal. 3d 1049, 1069 (1988).  In California, a defendant manufacturer can be held strictly liable for failure to warn if the plaintiff proves the following: "(1) the defendant manufactured, distributed, or sold the product; (2) the product had potential risks that were known or knowable at the time of manufacture or distribution, or sale; (3) that the potential risks presented a substantial danger to users of the product; (4) that ordinary consumers would not have recognized the potential risks; (5) that the defendant failed to adequately warn of the potential risks; (6) that the plaintiff was harmed while using the product in a reasonably foreseeable way; (7) and that the lack of sufficient warnings was a substantial factor in causing the plaintiff's harm."  *Tucker v. Wright Med. Tech., Inc.*, No. 11-CV-03086-YGR, 2013 WL 1149717, at *12 (N.D. Cal. Mar. 19, 2013) (citing *Rosa v. City of Seaside*, 675 F. Supp. 2d 1006, 1011 (N.D. Cal. 2009)), *aff'd sub nom., Rosa v. Taser Int'l, Inc.*, 684 F.3d 941 (9th Cir. 2012) & (citing Jud. Council of Cal. Civ. Jury Instructions No. 1205 [entitled "Strict Liability – Failure to Warn – Essential Factual Elements"] ).  With respect to a known or knowable risk, the plaintiff must prove that "the defendant did not adequately warn of a particular risk that was known or knowable in light of the generally recognized and prevailing best scientific and medical knowledge available at the time of manufacture and distribution."  *Rosa*, 675 F. Supp. 2d at 1012 (citing *Anderson*, 53 Cal. 3d at 1002).

A manufacturer of a prescription drug is obligated to warn physicians, not patients,

United States District Court
Northern District of California

of potential side effects associated with its pharmaceutical products.  *Motus v. Pfizer Inc.*, 358 F.3d 659, 661 (9th Cir. 2004) ("*Motus II*"); *Carlin v. Superior Court*, 13 Cal. 4th 1104, 1116 (1996).  Known as the "learned intermediary" doctrine, the duty to warn the physician – rather than the patient – is discharged if a manufacturer provides an adequate warning to the physician, regardless of whether the warning reaches the patient.  *Motus v. Pfizer Inc.*, 196 F. Supp. 2d 984, 991 (C.D. Cal. 2001) *aff'd sub nom. Motus v. Pfizer Inc. (Roerig Div.)*, 358 F.3d 659 (9th Cir. 2004).  "A plaintiff asserting causes of action for failure to warn must prove not only that no warning was provided or that the warning was inadequate, but also that the inadequacy or absence of a warning caused the plaintiff's injury."  *See Wendell v. Johnson & Johnson*, No. C 09–04124 CW, 2012 WL 3042302, at *7 (N.D. Cal. July 25, 2012) (emphasis added) (internal citations omitted)); *Brown*, 44 Cal. 3d at 1062.

Defendant contends that it "is left to guess about what aspects of the FDA-approved Mirena warnings are allegedly inadequate and how Plaintiff believes the warnings should be different."  Reply at 5.  The Court disagrees.

Plaintiff has alleged that (1) Defendant manufactured, distributed, and sold Mirena; (2) Mirena poses potential risks to users such as developing infection, cysts, and physical pain and these risks were known or knowable at the time of manufacture or distribution, *see* SAC ¶22, 70-74 (alleging that the Department of Health and Human Services issued a warning in March 2009 regarding Defendant's advertising material noting that Defendant did not communicate any risk information); (3) the potential risks presented a substantial danger to users of Mirena; (4) ordinary consumers such as Plaintiff would not have recognized the potential risks; (5) the Defendant failed to adequately warn of the potential risks of developing infections and cysts, among other injuries; (6) Plaintiff was harmed while using the product in a reasonably foreseeable way; (7) and the lack of sufficient warnings was a substantial factor in causing Plaintiff's harm because Plaintiff alleges she would not have used Mirena had she received adequate warnings disclosing these risks, *see id.* ¶ 79.  Plaintiff has thus alleged in the SAC sufficient facts to state a plausible claim for

1   strict liability failure to warn.

2       Neither party raised the learned intermediary defense in their papers with respect to

3   strict liability failure to warn.  Had Defendant invoked the learned intermediary defense at

4   this procedural stage, the result would be no different.  Defendant can discharge its duty to

5   warn about Mirena if it provides an adequate warning to the physician.  *Motus I*, 196 F.

6   Supp. 2d at 991.  Here, Plaintiff has also alleged that Defendant's warning to her physician

7   was non-existent or inadequate and that the inadequacy of the warning or its absence

8   caused Plaintiff's injury.  *See* SAC ¶ 79 ("Plaintiff did not have the same knowledge as

9   Defendant and no adequate warning was communicated to her or her physician(s).  Had

10  the Plaintiff received adequate warnings regarding Mirena, she would not have had the

11  device implanted.").  At the motion to dismiss stage, even had Defendant raised the

12  learned intermediary defense, Plaintiff has alleged sufficient facts to withstand the motion

13  to dismiss.  *See Wendell v. Johnson & Johnson*, No. C 09-04124 CW, 2010 WL 271423, at

14  *3 (N.D. Cal. Jan. 20, 2010) (Wilkin, J.) (denying drug manufacturer's motion to dismiss

15  because at pleading stage manufacturer could not prove that the learned intermediary

16  doctrine barred all plaintiff's claims where plaintiff alleged manufacturer did not

17  adequately convey to physicians the known or knowable risks of the drug).

18      For the foregoing reasons, Defendant's motion to dismiss Plaintiff's Second Cause

19  of Action with respect to the strict liability – failure to warn claim is DENIED.

20      **C.      Strict Liability – Design Defect Claim**

21      A design defects exist where a product is built in accordance with its intended

22  specifications, but the design itself is inherently defective.  *Barker*, 20 Cal. 3d at 429.

23  Controlling California authority unequivocally prohibits strict liability claims for design

24  defect against manufacturers of prescription drugs.  *See Brown*, 44 Cal. 3d at 1069

25  (holding that no manufacturer strict liability exists for design defect injuries caused by a

26  prescription drug); *Tucker,* 2013 WL 1149717, at * 6 (collecting cases in accord and

27  dismissing strict liability claim based on design defect as precluded by California law).

28  Moreover, the California Court of Appeal has squarely held that a manufacturer of

1    intrauterine devices cannot be held strictly liable for design defect. *Plenger v. Alza Corp.*,

2    11 Cal. App. 4th 349, 360-61 (1992).

3         Here, Plaintiff alleges that her Mirena administers a prescribed drug, levonorgestrel,

4    and was installed by a healthcare provider at Community Physicians Network for Women

5    in Indianapolis, Indiana.  SAC ¶¶ 14-16, 29.  Accordingly, the Court holds that Plaintiff's

6    strict liability claim based on purported design defect in Mirena is precluded as a matter of

7    California law.  The Court therefore GRANTS WITHOUT LEAVE TO AMEND

8    Defendant's motion to dismiss Plaintiff's strict liability – design defect claim.

9

10   **III.    Implied and Express Warranty Claims**

11        **A.    Breach of Implied Warranty**

12        Plaintiff alleges in her Third Cause of Action for breach of implied warranty that

13   Defendant warranted Mirena to be of merchantable quality, safe and "fit for the ordinary

14   purpose" of its use to Plaintiff, other Mirena users, physicians and healthcare providers.

15   SAC ¶¶ 87-88.  To maintain her claim, a plaintiff must allege (1) that she intended to use

16   the product for a particular purpose; (2) that the defendant had reason to know of this

17   purpose; (3) that the plaintiff relied on defendant's skill or judgment to provide a product

18   suitable for this purpose; (4) that the defendant had reason to know that buyers relied on its

19   skill or judgment; and (5) that the product was unfit for the purpose for which it was

20   purchased and that it subsequently damaged the plaintiff. *Frisby-Cadillo v. Mylan, Inc.*,

21   No. C 09-05816 SI, 2010 WL 1838729, at *3 (N.D. Cal. May 5, 2010) (citing *Keith v.*

22   *Buchanan*, 173 Cal. App. 3d 13, 25 (1985)).

23        The Court finds that Plaintiff has adequately stated a claim for breach of an implied

24   warranty.  Plaintiff has alleged that she chose Mirena because it was promoted as a safe

25   and effective method of birth control, SAC ¶ 91; Defendant had reason to know of this

26   purpose because it promoted Mirena as a contraceptive, *id.* ¶¶ 87-88; Plaintiff relied on

27   Defendant's skill and judgment as Defendant is in the business of designing,

28   manufacturing, advertising and distributing prescription drugs and women's healthcare

United States District Court
Northern District of California

11

United States District Court
Northern District of California

1  products, *id.* ¶ 90; that Defendant knew or had reason to know that consumers so relied, *id.*

2  ¶ 87; that Mirena was unfit for that purpose and Plaintiff subsequently suffered from

3  infections, a cyst and abdominal pain as a result of Mirena, *id.* ¶¶ 93-95.  These

4  allegations, while brief, are sufficient to state a claim.

5       In addition to challenging the sufficiency of the pleadings, Defendant also argues

6  that her breach of implied warranty claim fails because she was not in contractual privity

7  with Defendant.  *See Blanco v. Baxter Healthcare Corp.*, 158 Cal. App. 4th 1039, 1058-59

8  (2008).  However, California recognizes an exception to the privity requirement in breach

9  of warranty claims pertaining to food or drug products.  *Wendell,* 2010 WL 271423, at *5

10  (citing *Gottsdanker v. Cutter Labs.*, 182 Cal. App. 2d 602 (1960)); *see also Arnold v. Dow*

11  *Chem. Co.*, 91 Cal. App. 4th 698, 720 (2001) (citing *Gottsdanker* with approval).  This

12  exception allows an implied warranty to run from the manufacturer to the ultimate

13  consumer.  *Aaronson v. Vital Pharm., Inc.*, No. 09-CV-1333 W (CAB), 2010 WL 625337,

14  at *5 (S.D. Cal. Feb. 17, 2010) (citing *Windham at Carmel Mtn. Ranch Assn. v. Superior*

15  *Court*, 109 Cal. App. 4th 1162, 1168-70 (2003)).

16       Accordingly, that Plaintiff was not in privity with Defendant does not bar her

17  implied breach of warranty claim as a matter of law given that claim is sufficiently

18  pleaded.  Defendant's motion to dismiss Plaintiff's Third Cause of Action is DENIED.

19       **2.**     **Breach of Express Warranty**

20       Under California law, "[i]n order to plead a cause of action for breach of express

21  warranty, one must allege the exact terms of the warranty, plaintiff's reasonable reliance

22  thereon, and a breach of that warranty which proximately causes plaintiff injury."  *Frisby-*

23  *Cadillo*, 2010 WL 1838729, at *4 (citing *Williams v. Beechnut Nutrition Corp.*, 185 Cal.

24  App. 3d 135, 142 (1986)).  In *Frisby-Cadillo*, the court recognized that a plaintiff need not

25  quote the exact terms of the warranty when the plaintiff alleged that defendant "utilized the

26  advertising media to urge the use and application of [the subject product] and expressly

27  warranted to the general public including plaintiff herein, that said product was effective,

28  proper and safe for its intended use."  *Id.* (quotation marks omitted).  Indeed, "[p]roduct

advertisements, brochures, or packaging can serve to create part of an express warranty." *Rosales v. FitFlop USA, LLC*, 882 F. Supp. 2d 1168, 1178 (S.D. Cal. 2012)) (citing Cal. Com. Code § 2313(1)(b) (2002)).  While a plaintiff need not have relied on the individual advertisements, plaintiff must have actually been exposed to the advertising.  *See In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F. Supp. 2d 1145, 1183 (C.D. Cal. 2010).

Contrary to Defendant's argument, Plaintiff has pleaded a breach of express warranty claim.  First, Plaintiff has sufficiently pleaded that Mirena's advertising failed to adequately warn about the potential health risks of Mirena and that Defendant promoted Mirena as safe for use.  SAC ¶¶ 18-19, 21, 97.  Plaintiff's allegations in the SAC allow for an inference to be drawn that Plaintiff knew about Defendant's claims that Mirena was safe and effective for use by the public at large.  *Id.* ¶ 97.  Second, Plaintiff alleges that she reasonably relied on these warranties in choosing Mirena, thus obviating the requirement to show privity in a breach of express warranty claim.  *Id.* ¶¶ 98-99.  *See Fieldstone Co. v. Briggs Plumbing Products, Inc.*, 54 Cal. App. 4th 357, 369 n. 10 (1997), *superseded by statute on other grounds as stated in Greystone Homes, Inc. v. Midtec, Inc.*, 168 Cal. App. 4th 1194, 1213 (2008) (an exception to the general rule that privity of contract is a required element of an express breach of warranty cause of action exists where a plaintiff's decision to purchase the product was made in reliance on the manufacturers' written representations in labels or advertising materials).  Third, Plaintiff alleged that a breach of the express warranty proximately caused her injuries when she suffered from infections, an ovarian cyst, and abdominal pain caused by Mirena.  SAC ¶¶ 101.  Plaintiff has thus stated a claim for breach of express warranty.  Identification of the specific statements used by Plaintiff in her purchasing decision are certainly an appropriate avenue for discovery, but at this procedural stage Plaintiff has adequately pleaded facts to establish an express warranty that was reasonably relied upon.  Thus, Defendant's motion to dismiss Plaintiff's Fourth Cause of Action for breach of express warranty is DENIED.

**CONCLUSION**

For the foregoing reasons, the Court:

1) DENIES Defendant's motion to dismiss Plaintiff's First Cause of Action for negligence;

2) GRANTS WITH LEAVE TO AMEND Defendant's motion to dismiss Plaintiff's Second Cause of Action with respect to the strict liability – manufacturing defect claim;

3) DENIES Defendant's motion to dismiss Plaintiff's Second Cause of Action with respect to the strict liability – failure to warn claim;

4) GRANTS WITHOUT LEAVE TO AMEND Defendant's motion to dismiss Plaintiff's Second Cause of Action with respect to strict liability – design defect claim;

5) DENIES Defendant's motion to dismiss Plaintiff's Third Cause of Action for breach of implied warranty; and

3) DENIES Defendant's motion to dismiss Plaintiff's Fourth Cause of Action for breach of express warranty.

Should Plaintiff amend the complaint, any amended pleading shall be filed no later than **January 9, 2014**.

**IT IS SO ORDERED.**

Dated:   12/19/13

THELTON E. HENDERSON, JUDGE
UNITED STATES DISTRICT COURT